# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7119 | **DATE** | 1/18/2002 |
| **CASE TITLE** | USA, ex rel. Gregory McMillen vs. Kenneth M. Briley | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Petitioner's claim for habeas relief is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 4 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JAN 22 2002 date docketed | 15 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | 1/18/2002 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| ETV | courtroom deputy's initials | 02 JAN 18 PM 4:09 Date/time received in central Clerk's Office | ETV mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES EX REL.<br>GREGORY MCMILLEN (#N-12324),<br><br>Petitioner,<br><br>v.<br><br>KENNETH M. BRILEY, Warden,<br><br>Respondent. | No. 01 C 7119<br><br>Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

DOCKETED
JAN 2 2 2002

Petitioner Gregory McMillen is serving a life sentence for the 1984 murder of Lollicy Vivirit, a high-school sophomore whose decomposed body was found in the basement of a South Side Chicago building more than a year after she had last been seen alive. The murder remained unsolved until 1992, when Petitioner, while detained in the Cook County Jail on a burglary charge, confessed to the murders of Vivirit and two other women, Vivian Bramlet and Tania Davis. Police linked Petitioner's detailed confession to the circumstances of Vivirit's disappearance and the discovery of her body, and Petitioner identified Vivirit from a photograph. After his initial conviction was reversed for trial errors, Petitioner was tried in the Circuit Court of Cook County and convicted a second time. The present petition for habeas corpus is Petitioner's last attempt to avoid the consequences of his crime and confession.[1]

---

[1] Judge Gettleman of this court denied Petitioner's habeas corpus petition challenging his 1994 conviction for the June 1986 murder of Bramlet. *United States ex rel. McMillen v. Sheahan*, No. 97 C 4128, 1998 WL 355438 (N.D. Ill. 1998).

## FACTUAL BACKGROUND[2]

While incarcerated in Cook County jail pending sentencing on a burglary charge, Petitioner communicated to his cellmate that he wanted to speak to police about certain murders he had committed. *People v. McMillen*, (hereinafter, "*McMillen I*"), 281 Ill. App. 3d 247, 249, 666 N.E.2d 812, 813 (1st Dist. 1996). His cellmate telephoned the police, and Detective Michael Kill of the Chicago Police Department arranged to interview Petitioner. *Id.*, 666 N.E.2d at 813. Kill and Chris O'Riley, an investigator with the Cook County State's Attorney's Office, met with Petitioner on June 26, 1992. *Id.*, 666 N.E.2d at 813; *People v. McMillen* (hereinafter, "*McMillen II*"), No. 1-98-4672, Order of the Illinois Appellate Court, May 5, 2000, at 3, Exhibit D to Respondent's submission of relevant documents filed pursuant to this court's order of November 19, 2001 (Docket No. 12) (hereinafter "Resp. submissions"). In this interview, Petitioner confessed to murdering three women: Lollicy Vivirit (referred to herein as the victim), Vivian Bramlet, and Tania Davis. *McMillen I* at 249, 666 N.E.2d at 813. Petitioner told Kill and O'Reilly that, in March of 1984, he had met a young girl on her way to school near 7200 South Dorchester in Chicago. *Id.*, 666 N.E.2d at 814. Petitioner said the girl told him she was a sophomore at South Shore High School and wanted to go to college to become a nurse. *Id.*, 666 N.E.2d at 814.

Petitioner took her to a restaurant for breakfast. *Id.*, 666 N.E.2d at 814. According to Petitioner, after breakfast, the two became romantically involved, but

---

[2] A federal court reviewing a petition for writ of habeas corpus under 28 U.S.C. § 2254 presumes the state court's factual findings are correct. 28 U.S.C. § 2254(e)(1); *see also Sumner v. Mata*, 449 U.S. 539, 547 (1981). A petitioner has the burden of establishing by convincing evidence that a state court's factual determinations are erroneous. *See U.S. ex rel Green v. Greer*, 667 F.2d 585, 589 n.6 (7th Cir. 1981). McMillen does not challenge the Illinois Appellate Court's factual findings in his petition. The court, therefore, adopts the facts set forth by the Illinois Appellate Court in People v. McMillen, 666 N.E.2d 812 (Ill. App. Ct. 1996), and in the Illinois Appellate Court's Order of May 5, 2000, Exhibit D to Respondent's submission of relevant documents filed pursuant to this court's order of November 19, 2001 (Docket No. 12).

2

Petitioner did not have enough money to take her to a motel so they went to the basement of a building at 72nd Street and Bennett. *Id.,* 666 N.E.2d at 814. As they engaged in sexual intercourse, Petitioner grabbed a chain from the floor and strangled the victim until he believed she was dead. *Id.,* 666 N.E.2d at 814. Petitioner dragged her body into a corner and partially covered it with a couch. *Id.,* 666 N.E.2d at 814. As he started to leave the basement, Petitioner heard her moaning, so he returned and smashed her skull with a piece of masonry. *Id.* at 249-50, 666 N.E.2d at 814. He then removed his blood-spattered shirt, took the victim's jacket, and left the building. *Id.* at 250, 666 N.E.2d at 814. Following his confession, Petitioner identified the victim from a photograph. *Id.,* 666 N.E.2d at 814.

At his first trial in 1995, Petitioner pleaded not guilty by reason of insanity. After hearing conflicting expert testimony, the jury rejected Petitioner's claim of insanity and convicted him of murder.[3] Petitioner appealed, and on June 4, 1996, the Illinois Appellate Court vacated the conviction because the jury heard testimony about his confessions to the other murders, including highly prejudicial details of his confession to the brutal murder of Bramlet. *Id.* at 255, 666 N.E.2d at 817. The court noted that "[a] jury tainted by evidence of other crimes could just as easily, and unfairly, reject an insanity defense based on its belief that the defendant is an evil person as it could reject the defendant's claim of innocence." *Id.* at 255, 666 N.E.2d at 817 (*quoting People v. Chambers*, 259 Ill. App. 3d 631, 636, 631 N.E.2d 817, 821 (1st Dist. 1994)). Where evidence of other crimes is improperly presented to the jury, the court noted, "the conviction should only be upheld where the properly admitted evidence is so overwhelming that no fair minded jury could have voted for acquittal," *id.* at 255, 666 N.E.2d at 817 (*quoting People v. Chambers*, 259 Ill. App. 3d 631, 636 (1st Dist. 1994)). Under that standard, the court concluded Petitioner was entitled to

---

[3] It is not clear from the record on what date Petitioner was first convicted.

a new trial because the properly admitted evidence was not so overwhelming that no fair-minded jury could have acquitted him. *Id.* at 255, 666 N.E.2d at 817.

At his second trial in 1998, Petitioner abandoned the insanity defense, but attempted to explain his confession to Vivirit's murder as a product of confusion and mental illness. *People v. McMillen* (hereinafter, "*McMillen II*"), No. 1-98-4672, Order of the Illinois Appellate Court, May 5, 2000, Exhibit D to Resp. submissions. At this second trial, the state again introduced, through the testimony of Detective Kill, Petitioner's confession to Vivirit's murder. *McMillen II* at 3. Petitioner took the position that he only intended to confess to the 1986 murder of Bramlet, and that he falsely confessed to the 1984 murder of Vivirit because he confused the two killings. *Id.* at 2.

The state moved to introduce Petitioner's statements confessing to the killings of Bramlet and Davis, arguing that they were probative of the voluntariness of Petitioner's confession that he had killed Vivirit. *Id.* at 4. The court allowed the state to introduce evidence of the prior confessions but not "what the charges were in those other matters." *Id.*

Petitioner, the sole witness in his defense, testified that he had been in jail in June of 1992 for burglary when a fellow inmate, Kirby White, made phone calls on his behalf to people who "were supposed to help us." *Id.* Petitioner testified that he spoke for a long time with Kill and another investigator, and that he told them he wanted to speak with them because he had been "hearing voices and seeing dead people and believed that [he] was killing people." *Id.* Petitioner testified that he was taken to a room with Kill and the other investigator where he was allowed to eat and use the bathroom. *Id.* at 5. While walking past a desk, Petitioner testified that he saw a photograph of himself and his girlfriend among a pile of pictures on the desk, and that Kill asked him to sign the back of "about five" photographs. *Id.* Petitioner testified

4

that Kill asked him if Vivirit was "one of the young girls that I have said that I have killed" and if he had killed her. *Id.* Petitioner responded that he did not know. *Id.*

Petitioner testified that he agreed to sign a handwritten statement because he thought he would "get some help," which, to Petitioner, meant medication. *Id.* Petitioner further testified that he could not have met and killed Vivirit in March of 1984 because he thought he had been in jail at that time.[4] *Id.* Petitioner admitted that he had been convicted of felonies in 1988, 1989 and 1994. *Id.*

On cross-examination, Petitioner initially admitted that he read the written statement Kill prepared and made corrections to it. *Id.* He subsequently denied reading the statement, however, and said he signed it because he was tired and hungry. *Id.* Petitioner said that he may have given five statements, but was not sure. *Id.* Petitioner's counsel objected to this line of questioning as an attempt to introduce evidence of other crimes. *Id.* In a sidebar conference, the judge ruled that the prosecutor was permitted to ask Petitioner if he had made statements admitting to other offenses; if he denied making the statements, the court added, they could be used to impeach him. *Id.* at 5-6. When cross-examination resumed, Petitioner testified that Kill had told him to sign the statement pertaining to Vivirit's murder, and that Petitioner had told Kill he was not sure if he had killed her. *Id.* at 6. Petitioner claimed that he "never told anyone that I killed Lollicy Vivirit or Rimlett [sic]." *Id.* Petitioner reiterated that he never read the statement regarding the killing of Vivirit. *Id.*

---

[4] From a review of the Illinois Department of Corrections website, www.idoc.state.il.us, the court determined that Petitioner was incarcerated there for the first time in 1989. No records are available for the Cook County Jail that date back to 1984, but the court notes that Petitioner has not filed an affidavit stating he was in jail at that time. He merely asserts a (defaulted) claim that counsel was ineffective for not confirming whether or not he was in jail in March of 1984.

5

On redirect, Petitioner denied strangling anyone, and stated "I didn't hit her in the head with a boulder." *Id.* On recross, the state asked Petitioner whom he had meant by "her," and Petitioner responded, "the girl in the picture." *Id.* The state's attorney asked Petitioner if Bramlet was his former girlfriend, and he responded that she was. The prosecutor next asked if Vivirit was "the girl that you're on trial for right now," and Petitioner said, "yeah, I think so." *Id.* Petitioner's counsel moved for a mistrial based on this exchange, but the motion was denied. In rebuttal, the state introduced testimony from two assistant state's attorneys who had been present at the time Petitioner signed three written statements. *Id.* at 6-7.

Petitioner took the stand in surrebuttal, and testified that Bramlet had been his girlfriend in 1984, that they had a child together, that he "may have killed her" in 1985 or 1986, and that he had been convicted of that crime. *Id.* at 7. In a sidebar, the state objected that this testimony did not rebut anything, and Petitioner's counsel countered that Petitioner would testify that he had confused the deaths of Vivirit and Bramlet, and that he had thought he was confessing to Bramlet's murder. *Id.* The state then argued that it should be allowed to introduce the details of Bramlet's death to rebut the claim of confusion, and the court agreed. *Id.*

When Petitioner resumed his testimony, he testified that when he was interviewed by Kill, he intended to talk about Bramlet's death. *Id.* On cross-examination, Petitioner admitted that he had in fact confessed to killing both Bramlet and Vivirit. The prosecutor proceeded to ask him about the details of the murders, and when Petitioner stated that he did not remember, the gruesome details were read from his statements. *Id.* at 8. In closing argument, the state argued that Petitioner had already been convicted of Bramlet's murder, and that, comparing the facts of the two

murders, Petitioner could not have confused the two offenses.[5] *Id.* The jury found Petitioner guilty of first degree murder on December 4, 1998. *Id.*

Petitioner was again sentenced to life imprisonment, and again he appealed, asserting again that he had been unfairly prejudiced at trial because the jury heard evidence of his confession to Bramlet's murder. *Id.* This time, on May 5, 2000, the Illinois Appellate Court affirmed his conviction. *Id.* at 15. On June 16, 2000, Petitioner sought leave to appeal to the Illinois Supreme Court, but that court denied his petition on October 4, 2000. (Petitioner's Petition for Leave to Appeal, June 16, 2000, Exhibit E to Resp. submissions; Order of the Illinois Appellate Court denying leave to appeal, October 4, 2000, Exhibit F to Resp. submissions.) Petitioner filed his petition for a writ of habeas corpus with this court on September 10, 2001.

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts requires the court to conduct an initial review of the petition. Unless it is clear that the petitioner is not entitled to relief, the court will order a response "or take such other action as the judge deems appropriate." In this case, Petitioner's most significant claim is that he was convicted on the basis of a coerced confession obtained when he was insane. In order to determine whether that claim had been preserved for habeas

---

[5] Among other details, the jury heard that Petitioner had confessed to repeatedly punching Bramlet so hard that blood was coming out of her shorts, and that when Bramlet tried to stand up, Petitioner hit her over the head with a brick. *McMillen II* at 8. Petitioner admitted that he remembered hitting Bramlet over the head with a brick and walking away. *Id.* Beyond the differences between the crimes readily apparent in Petitioner's confession, the remaining details of the two murders were significantly different. Vivirit was killed in 1984, while Bramlet was killed two years later in 1986. *Id.* at 13. Petitioner had not met Vivirit prior to the day of her murder, but, at the time of Bramlet's death, Petitioner was Bramlet's boyfriend and the father of her child. *Id.* Vivirit was killed in the basement of an abandoned building; Bramlet was killed outside near a set of railroad tracks. *Id.* Although both victims suffered blows to the head, Vivirit was first strangled with a chain, covered with a couch and struck in the head, while Bramlet was severely beaten, then struck in the head.

7

review, the court directed Respondent to file copies of documents from Petitioner's state court proceedings. (Order of November 19, 2001, Docket No. 12.)

At the court's request, Respondent furnished, (1) Petitioner's opening brief on direct appeal after the first trial, (2) Opinion of the Illinois Appellate Court reversing the circuit court's judgment on the first trial and remanding for further proceedings, (3) Petitioner's opening brief on remand from direct appeal, (4) Order of the Illinois Appellate Court affirming Petitioner's second conviction on his second appeal, (5) Petitioner's petition for leave to appeal to the Illinois Supreme Court, and (6) Order of the Illinois Supreme Court denying Petitioner leave to appeal. Respondent reported, in addition, that no post-conviction petitions relating to Petitioner's conviction had been filed, and provided a certified copy, dated December 6, 2001, of the electronic records maintained by the Clerk of the Circuit Court of Cook County in Petitioner's case, No. 93 CR 28835. (Exhibit G to Resp. submissions.)

In the Petition, nevertheless, Petitioner claims that he did file a post-conviction petition on either January 29 or February 4, 2001.[6] Exhibit A to the Petition is a copy of a two-page form document signed by Petitioner and captioned "Petition For Post Conviction Relief" and bearing a "Received" stamp from the Circuit Court of Cook County dated January 29, 2001. Exhibit C to the Petition contains two documents: (i) a copy of a letter dated April 29, 2001, addressed to the Clerk of the Circuit Court of Cook County, and requesting a copy of the post-conviction petition Petitioner claimed to have sent on February 4, 2001, and (ii) a notarized document, dated May 1, 2001, and captioned "Judicial Notice," stating that Petitioner "would like the Court to take notice of this action of requiring information concerning the Petitioner's timely filed Post-conviction petition, filed on February 4, 2001." The second document in Exhibit C bears no stamp that it was received by this, or any court, nor is it clear which court

---

[6] The date is inconsistent throughout the Petition.

8

Petitioner intended to notify of his post-conviction petition. Nevertheless, for the reasons explained below, it is unnecessary to determine whether Exhibit A, or any post-conviction petition, was actually filed. After reviewing the petition, exhibits, and court documents submitted by the Respondent, the court is satisfied that Petitioner has no viable claims.

## DISCUSSION

Section 2254 of the Anti-Terrorism and Effective Death Penalty Act entitles a prisoner to a writ of habeas corpus if he is being held in prison pursuant to a state court judgment obtained in violation of the Constitution. 28 U.S.C. § 2254; *Williams v. Taylor*, 529 U.S. 362, 375, 120 S. Ct. 1495, 1504 (2000); *Lowery v. Anderson*, 225 F.3d 833, 838 (7th Cir. 2000). With respect to any claim that was adjudicated on the merits in state court proceedings, a federal court will not grant a writ of habeas corpus unless that state decision (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1) & (2); *Winters v. Miller*, No. 00-1125, 2001 WL 1620008, __ F.3d __ (7th Cir. Dec. 19, 2001); *Hough v. Anderson*, 272 F.3d 878, 889 (7th Cir. 2001). This court, however, will not address the merits of a habeas corpus petition unless the petitioner can show that he has exhausted his state remedies and avoided procedural default. *U.S. ex. rel. Bell v. Pierson*, 267 F.3d 544, 551 (7th Cir. 2001).

Habeas relief is only available to a petitioner who has exhausted his state remedies by presenting his claims fully and fairly to the state courts. 28 U.S.C. § 2254. *O'Sullivan v. Boerckel,* 526 U.S. 838, 842 (1999). In *O'Sullivan,* the Supreme Court explained that "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims

9

are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." 526 U.S. at 845. In Illinois, "one complete round" is finished once the petitioner has presented his claims, whether on direct appeal or on post-conviction review, at each stage of the appellate process, up through and including the Illinois Supreme Court. *See id.* at 847-48.

## A. Claim of Violation of Post-Conviction Rights

Petitioner's first claim is that the state "violated his right to post-conviction under the rules of 725 ILCS 5/122-1." Petitioner apparently complains that the Circuit Court of Cook County did not address his post-conviction petition in a timely manner. This claim does not raise any constitutional issue, however, because there is no constitutional right to post-conviction review. *See Pennsylvania v. Finley*, 481 U.S. 557 (1987). The consequences of Petitioner's failure to file, or conversely, the Circuit Court's alleged loss of, his post-conviction petition are resolved purely by reference to state law and bear no weight on the constitutionality of Petitioner's confinement. Because "violations of state law alone are, of course, not cognizable in federal habeas corpus proceedings . . ." *Steward v. Gilmore*, 80 F.3d 1205, 1214 (7th Cir. 1996), the court cannot consider Petitioner's first claim.

The court also notes that, even assuming Petitioner actually filed his post-conviction petition, it would have had no effect in the state court, nor on this court's analysis of Petitioner's habeas claims. The post-conviction petition is of no consequence because in it, Petitioner presented no grounds for relief. The post-conviction petition merely recites the dates of Petitioner's conviction and appeal, requests that he be permitted to proceed as a pauper, that counsel be appointed, and that "the Court grant any and all appropriate relief, including a new trial." (Exhibit A to Petition.) The court can only presume that Petitioner was asking the state court

to review once again the arguments previously raised on appeal, a presumption confirmed by Petitioner's statement in the habeas petition that the issues raised in his post-conviction petition were "same as appeal."

Thus, to the extent Petitioner raised any issues in a post-conviction petition, they were identical to the issues already rejected by the state courts on direct appeal. However, the Illinois courts will not consider a post-conviction petition solely raising issues that were, or could have been, raised on direct appeal: "[A]ny issues which were decided on direct appeal are barred by *res judicata;* any issues which could have been raised on direct appeal are forfeited." *People v. Rogers*, 197 Ill. 2d 216, 221, 756 N.E.2d 831, 833 (2001); *see also Wooten v. Hartwig*, 108 F.3d 1380 (7th Cir. 1997) (because the claim was decided on the merits on direct appeal, the state would consider this claim barred on res judicata grounds). Consequently, the outcome of any state court review of the allegedly-filed petition would have been predetermined: the claims would have been barred on *res judicata* grounds.

## B. Involuntary Confession Claim

### 1. Exhaustion

It is a cornerstone of habeas corpus jurisprudence that federal courts are only a backstop to state courts: "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State," which is not completed "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(b)(1)(A), (b)(2). Petitioner pursued the direct appeal of his second conviction in both the Illinois Appellate Court and the Illinois Supreme Court, both times challenging the fairness of his conviction because the jury heard that Petitioner was a convicted murderer, and also heard the grisly details of another murder Petitioner committed. Thus, Petitioner

11

exhausted these claims on direct appeal in the state courts. With respect to any claims raised in the Petition that were not raised on direct appeal, the time has passed for filing another post-conviction petition (six months have elapsed since the Illinois Supreme Court denied Petitioner leave to appeal). *See* 725 ILCS 5/122-1(c). Because the Illinois courts are no longer open to Petitioner for review of his claims, they are deemed exhausted for purposes of federal habeas review. *See Castille v. Peoples*, 489 U.S. 346, 350 (1989); *Cawley v. DeTella*, 71 F.3d 691, 694 (7th Cir. 1995).

2.  **Procedural Default**

Although Petitioner has satisfied the exhaustion requirement, he did not clear the procedural default hurdle. Before a federal court may consider a petitioner's claim that his conviction or sentence violates the Constitution, he must first have given the state courts a full and fair opportunity to review the claim. Failure to properly present a claim to the state's highest court results in a procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Full and fair presentation requires not only that the claim have been presented to the highest state court having jurisdiction, but that it have been presented as a federal constitutional claim. *Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001).

Petitioner's second claim is that the use of his "involuntary" confession violated his right against self-incrimination. Specifically, Petitioner contends that at the time he confessed to the murders, he was in need of mental health treatment and psychotropic medication, and was "obviously insane." Thus, Petitioner asserts, his confession was "obviously involuntary and coerced." Although Petitioner here asserts a constitutional claim, he did not first present it to the Illinois courts. It appears from Petitioner's brief on his first appeal that, prior to Petitioner's first trial, his counsel moved to suppress his confession and the trial court denied the motion. This denial was not appealed, and presumably became the law of the case upon remand for retrial.

12

Since the issue was never again raised in state court, only the state trial court was presented with any form of this claim. Petitioner did not raise this issue through one complete round of state court proceedings, and accordingly, this claim has been procedurally defaulted.

Where a petitioner has procedurally defaulted on his claims, a federal court will only review such defaulted claims if the petitioner can show: (1) cause for failure to raise the claim, and actual prejudice resulting therefrom; or (2) that refusal to consider the defaulted claim would result in a fundamental miscarriage of justice, meaning that the constitutional violation "has probably resulted in the conviction of one who is actually innocent." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Anderson v. Cowan*, 227 F.3d 893, 899-900 (7th Cir. 2000); *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

A default resulting from counsel's failure to appeal a claim can be excused if the failure amounts to ineffective assistance of appellate counsel. *Murray*, 477 U.S. at 492. Where, as here, ineffective assistance of appellate counsel is asserted as cause for a procedural default of another claim, (in this instance the coerced confession claim), ineffective assistance is a separate claim that must itself be presented to the state courts. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). Ineffective assistance of appellate counsel is normally raised in a post-conviction petition that also raises the underlying claim that the allegedly ineffective attorney failed to raise. In the scant post-conviction petition Petitioner claims to have filed, he did not raise ineffective assistance of appellate counsel for appellate counsel's failure to raise his coerced confession claim on appeal. Further, because there is no constitutional right to counsel in post-conviction proceedings, failure to raise ineffective assistance of appellate counsel in a post-conviction petition cannot be excused by ineffective assistance or lack of counsel. 28 U.S.C. § 2254(i); *Pittsonbarger v. Gramley*, 141 F.3d 728, 737 (7th Cir.

13

1998). Thus, ineffective assistance of appellate counsel is unavailable to Petitioner as cause for the procedural default of his coerced confession claim.

   3.   **Merits**

Even if Petitioner's second claim had been preserved for habeas review, the court concludes it would likely fail on the merits. A confession made by a vulnerable, mentally ill person is not necessarily inadmissible: the relevant question is not whether the defendant made a reasoned choice to confess, but whether the confession was coerced by the state. In *Colorado v. Connelly*, 479 U.S. 157 (1986), the Supreme Court reversed the Supreme Court of Colorado, which had held that defendant's confession, prompted by hallucinated voices demanding that he confess or kill himself, was involuntary and hence inadmissible. The U.S. Supreme Court reasoned that, while a defendant's mental condition is relevant to the question of whether a confession has been coerced, "[a]bsent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Id.* at 164. Here, Petitioner initiated the contact with police and prosecutors that led to his confession. While he may have hoped that he would receive medication or therapy, the record does not indicate that the state either promised medication or therapy as a reward for confessing, or withheld it to coerce a confession. As such, Petitioner's defaulted coerced confession claim stood little chance of success on the merits.

C.   **Due Process/ Equal Protection Claim**

Petitioner's third claim generally asserts a denial of both due process of law and equal protection of the laws. More specifically, Petitioner claims he was denied due process when the prosecutor, in closing argument, reminded the jury of Petitioner's own trial testimony that he had killed his girlfriend, Bramlet, and characterized him as a "convicted murderer." Petitioner protests that while he admitted on the stand to

killing Bramlet, there was no evidence of a murder conviction. Petitioner raised this claim both on his second direct appeal and in a handwritten portion of his petition for leave to appeal, and thus avoided procedural default.[7] Exhibits C and E to Resp. submissions.

A stringent standard of review awaits those claims that survive the procedural prerequisites, however. As noted earlier, under §§ 2254, a federal district court must deny habeas review for any claim the state court addresses on the merits unless that state decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. §§ 2254(d)(1); or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. §§ 2254(d)(2). The "contrary to" provision refers to questions of law, and on such questions, a federal court makes a *de novo* review. *See Lindh v. Murphy*, 96 F.3d 856, 869 (7th Cir.1996) (en banc), *rev'd on other grounds*, 521 U.S. 320 (1997). The "unreasonable application" exception pertains to mixed questions of law and fact. *Id.* at 870. A state court's application of Supreme Court precedent is reasonable if it is "at least minimally consistent with the facts and circumstances of the case," or "if it is one of several equally plausible outcomes." *Boss v. Pierce*, 263 F.3d 734, 742 (7th Cir. 2001) *quoting Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir.1997), and *Hall v. Washington*, 106 F.3d 742, 749 (7th Cir.1997). Even an incorrect application of Supreme Court precedent is not necessarily unreasonable. *See Hough*, 272 F.3d at 890.

The Illinois Appellate Court considered and rejected this issue on Petitioner's second direct appeal. *McMillen II*. The Appellate Court noted that a prosecutor "is given a great deal of latitude in closing argument," and "may comment upon the

---

[7] Because this claim fails on other grounds, the court puts aside some doubt as to whether Petitioner properly framed this issue as a constitutional violation before the state courts.

15

evidence and draw all legitimate inferences therefrom, even if those inferences are unfavorable to the defendant." *Id.* at 14, *citing People v. Hudson*, 157 Ill. 2d 401, 441, 626 N.E.2d 161, 178 (1993), and *People v. Jackson*, 293 Ill. App. 3d 1009, 1016, 689 N.E.2d 191, 197 (1st Dist. 1997). The court further observed that, "a verdict will not be disturbed . . . unless . . . the comments substantially prejudiced the defendant to the extent that, absent the comments, the jury would have returned a different verdict." *McMillen II* at 14, *citing People v. Byron*, 164 Ill. 2d 279, 295, 647 N.E.2d 946, 954 (1995). In light of Petitioner's testimony that he killed Bramlet and describing the details of her death, the court concluded that the state's reference to Bramlet's murder in closing was based upon evidence presented at trial and was unlikely to have unduly influenced jurors who had already heard Petitioner's own admissions regarding Bramlet's murder. *McMillen II* at 15. The Appellate Court patently rejected this claim on its merits. Significantly, Petitioner has not argued that the Illinois Appellate Court's decision was either contrary to or an unreasonable application of Federal law. Absent such a showing, for which the court finds no basis in the record, this court may not reach the merits of this claim.[8]

---

[8] The court notes that Petitioner had in fact been convicted of Bramlet's murder. While a felony homicide conviction is not necessarily a murder conviction, under the circumstances, the distinction has no constitutional significance. In reviewing this claim on appeal, the Appellate Court also disagreed with Petitioner's contention that there was no evidence of a murder conviction. *McMillen II* at 13. This court agrees. Consider a portion of the trial transcript Petitioner furnished with the Petition containing the following exchange between himself and his counsel:

Q. Do you know where Vivian Bramlet is now?
A: She is deceased.
Q: And how is she deceased?
A: I think, I may have killed her.
Q: Okay, When did you think you may have killed her?
A: Sir?
Q: When did you think you may have killed her?

(continued...)

In the third claim, Petitioner also charged that he was denied due process of law because at trial he was "flanked by two (2) S.O.R.T. Member in full uniform . . . in black combat," which "led jurors to conclude he must be a very dangerous man." This claim was never presented to the Illinois courts in any form, and is accordingly procedurally defaulted.

### D. Ineffective Assistance of Trial Counsel

Petitioner's fourth claim is that his trial counsel was ineffective for failing to "request a continuance to locate evidence to support [Petitioner's] claim that he was incarcerated in March of 1984." Petitioner also includes in this claim the following confused statement:

> there would have to be a fitness hearing held both for the purposes of determining a [sic] sanity of Petitioner at the time of the crime, at the time of trial, or sentencing, also a hearing aid would have had to have been provided to Petitioner during the entire trial . . . with respect to the MCMT-II test administered to defendant by Dr. Stone, he stated that the test was not used by forensic psychologists because it was not standardized to reflect the criminal population.

None of the issues raised in Petitioner's fourth claim were raised before the Illinois courts. All are, therefore, procedurally defaulted.

Petitioner did not suggest that cause exists for any of the claims he procedurally defaulted. The court already considered a possible argument that the procedural default of his coerced confession claim was caused by ineffective assistance of appellate counsel. As discussed above, such an argument would fail because Petitioner neglected to raise an independent ineffective assistance of appellate counsel claim before the Illinois state courts. The court finds nothing in the record to suggest that Petitioner

---

[8](...continued)
A:  It might have been in '85, '86, it had to be in '86. I don't exactly remember.
Q:  When I asked you about felony convictions yesterday, were you convicted of that, weren't you?
A:  Yes, I was.

17

could make a legitimate argument of cause and prejudice for any of the remaining procedurally defaulted claims.

## CONCLUSION

Petitioner's claim for habeas relief is denied.

ENTER:

Dated: January 18, 2002

REBECCA R. PALLMEYER
United States District Judge